STATE OF NORTH CAROLINA v. WALTER HERMAN BONDS

No. 7916SC563

(Filed 6 November 1979)

**1. Homicide § 21.7— second degree murder—shooting—sufficiency of evidence**

Evidence was sufficient for the jury in a second degree murder case where it tended to show that defendant, looking for his stepdaughter, entered the house where she was with a loaded .38 caliber pistol in his hand; after a fight with his stepdaughter, he went into the den where she had left the victim a few minutes earlier sitting on the couch asleep; no argument or loud noise was heard from the den; a shot was then heard and defendant left the den with a smile on his face; deceased was found immediately sitting on the couch, head back, shot through the cheek; deceased died of the wound a few days later; and the gun, located in defendant's car, had two fired shells in it.

**2. Homicide § 26 — second degree murder — elements — instructions improper**

Defendant is entitled to a new trial in a second degree murder case where the trial court erred by using the phrase "if anything else appears" rather than "if nothing else appears" during jury instructions and where the court erred during its final jury mandate by giving an instruction from which the jury could have understood that malice was not an essential element of the crime charged.

**3. Criminal Law § 134.2 — imposition of sentence — absence of defendant**

The trial court erred in entering a second judgment changing the period of imprisonment from not less than twenty years nor more than thirty years to an imprisonment term of not less than thirty years, since the judgment was entered in the absence of defendant.

APPEAL by defendant from *Bruce, Judge.* Judgment entered 30 November 1978 in Superior Court, SCOTLAND County. Heard in the Court of Appeals 25 October 1979.

Defendant was tried for murder in the second degree upon a bill of indictment, proper in form.

The state produced evidence tending to show the following: Bunny Sue Bonds is the stepdaughter of the defendant. At the time in question, she had been dating David Rea about two or three months. On 25 September 1977, about midnight, Bunny and David were at Doris Smart's house with Sherill Smart, Susan Smart and Meg Cathcart. Bunny lived with defendant and her mother, and was supposed to be home at midnight, but she went to sleep beside David on the couch in the den. She heard her mother come in and went into the hall to speak to her. Then she saw defendant coming down the hall with a gun in his hand. She began fighting with him and he struck her on the head with the gun, causing injuries to her that required medical treatment. Defendant then went into the den where David was seated on the couch. Bunny and her mother heard a shot and ran into the den where they found David seated on the couch with his head back and a wound in his cheek. They heard no loud voices or argument before the shot. David died a few days later. Officer Leazer testified defendant came to the sheriff's department and said he wanted to give himself up for the shooting on U.S. 401 South. Leazer then got a .38 caliber Colt pistol from defendant's car. It contained two spent shells and three live rounds.

Defendant's evidence indicated he lived with his wife, two stepdaughters, Bunny and Sheila, and a son. Bunny was supposed

to be home by midnight and when she was not there at 12:30, he and his wife drove to Doris Smart's house where they had seen Bunny's car and a black van. He had a pistol with him. His wife went to the door and while he waited a large dog began growling at him. He fired a shot over the dog to scare it away and went into the house to escape the dog. As he entered the hallway, Bunny began fighting him, but he got away and went into the den where he was jumped by David Rea. They scuffled; Rea grabbed the gun which fired, hitting Rea who fell onto the couch. Defendant went to the sheriff and turned himself in after the shooting. He was on good terms with David Rea and his death was accidental.

The jury returned a verdict of guilty of murder in the second degree and Judge Bruce orally sentenced defendant to imprisonment for not less than twenty years nor more than thirty years. The record on appeal then shows additional evidence (presumably offered by the state on the question of punishment) concerning sexual advances by defendant to Bunny over a long period of time. After this testimony, the court signed a written judgment imprisoning defendant for not less than twenty years nor more than thirty years and containing a provision that defendant "be considered for parole not earlier than at such time as he has served five years of his sentence, . . . and that only after having served such five years of said sentence that the defendant be eligible for parole; . . .." From this judgment defendant appealed and the court signed appeal entries on the same day, 30 November 1978.

On 5 December 1978, defendant made a motion for appropriate relief, contending that it was the court's purpose in sentencing defendant that he be eligible for parole at the end of five years, whereas under the sentence imposed he would have to serve twenty years before becoming eligible for parole. Defendant asked that he be resentenced. The state filed written objections to this motion. On 9 December 1978, in Lumberton, Robeson County, Judge Bruce held a hearing on defendant's motion and entered the following order:

This cause coming on to be heard and being heard before the undersigned Superior Court Judge, who presided at the 27 November 1978 Criminal Session of Superior Court for Scotland County in the Sixteenth Judicial District and being

heard on the Motion for Appropriate Relief filed by the defendant on the 5th day of December, 1978, at 2:10 o'clock p.m. And the Court upon hearing arguments of counsel hereby concludes as follows:

1. That the intent of the Court in sentencing the defendant on November 30, 1978, was through errors committed by the court not carried out by the terms of the sentence as it was imposed on the defendant on the 30th day of November, 1978.

2. That the written judgment and commitment dated the 30th day of November, 1978, is not worded so as to carry out the intent of the court at the time that the sentence was originally imposed.

3. That the State of North Carolina and the Defendant, Walter H. Bonds, are entitled as a matter of fundamental fairness to a judgment that accurately reflects, in terms of the appropriate statutory language, the intent of the court as to the sentence which was imposed on this defendant on November 30, 1978.

4. That for reasons stated above the judgment and commitment dated the 30th day of November, 1978, is therefore invalid as a matter of law.

IT IS THEREFORE ORDERED that the Motion for Appropriate Relief referred to above be and the same is hereby denied insofar as it requests that the defendant be resentenced.

IT IS FURTHER ORDERED that the written judgment and commitment dated the 30th day of November, 1978, be and the same is hereby amended to read as follows: "In open court the defendant appeared for trial upon the charge of second degree murder and thereupon entered a plea of not guilty; that the defendant having being [sic] found guilty of the offense of second degree murder, a felony, violating N.C. G.S. Section 14-17, and punishable by imprisonment of not less than two years nor more than life and the court having considered the evidence and arguements [sic] of counsel for the State and the Defendant;

IT IS ADJUDGED that the Defendant be imprisoned for the term of not less than thirty years in the custody of the North Carolina Department of Correction. In lieu of imposing a minimum term, the court recommends to the Parole Commission that the defendant serve a minimum of five (5) years before being granted parole, this recommendation being made pursuant to N.C. G.S. Section 15A-1351(d). IT IS ORDERED that the Sheriff commit the defendant effective November 30, 1978, to the custody of the North Carolina Department of Correction, to serve the sentence herein imposed, or until he shall have complied with the conditions for release pending appeal, if any, hereinafter set forth as to restitution, reparation and payment of Court cost. The court recommends that the defendant be required to make restitution to the family of the deceased, David Rea, for medical, hospital and funeral bills proximately caused by the injury to and the subsequent death of said David Rea, and that the defendant be required to pay the cost of this proceeding, all as a condition of attaining work release privileges or as a condition of parole. See the attached order of Restitution dated the 30th day of November, 1978.

DATED this the 30th day of November, 1978."

IT IS FURTHER ORDERED that the Clerk of Court of Scotland County shall pay to the Court Reporter who presided at this hearing the sum of seventy-five ($75.00) dollars and that the said sum of seventy-five ($75.00) [dollars] shall be taxed as a part of the cost of this proceeding.

DATED this the 9th day of December, 1978.

s/ R. MICHAEL BRUCE
R. Michael Bruce
Superior Court Judge Presiding

Judgment was then entered against defendant in accord with the above order. Defendant excepted to the entry of this judgment.

*Attorney General Edmisten, by Assistant Attorney General Jane Rankin Thompson, for the State.*

*Mason, Williamson, Etheridge and Moser, by James W. Mason, Terry R. Garner and John Wishart Campbell, for defendant appellant.*

MARTIN (Harry C.), Judge.

Defendant raises twenty assignments of error in his brief; however, we are only required to discuss three in disposing of this appeal.

[1] First, defendant contends his motions to dismiss at the close of the state's case and at the conclusion of all the evidence should have been allowed. We do not agree. Viewing the evidence in the light most favorable to the state as we are required to do, *State v. Cutler,* 271 N.C. 379, 156 S.E. 2d 679 (1967), we find plenary evidence to withstand the motions for dismissal. Defendant, looking for his stepdaughter, entered the Smart house with a loaded .38 caliber pistol in his hand. After a fight with his stepdaughter, he went into the den where Bunny had left David Rea a few minutes earlier sitting on the couch asleep. No argument or loud noise was heard from the den; then a shot was heard and defendant left the den with a smile on his face. David was found immediately, sitting on the couch, head back, shot through the cheek, and died from the wound within a few days. The gun, located in defendant's car, had two fired shells in it. Although defendant is the only surviving eyewitness to the shooting, the evidence is sufficient to submit the case to the jury on the charge of murder in the second degree.

[2] Next, we consider defendant's two exceptions to the charge of the court. Defendant challenges these two portions of the court's charge:

> Now, if the State proves beyond a reasonable doubt or it is admitted that the defendant intentionally assaulted David Rea with the weapon or intentionally inflicted upon David Rea with the deadly weapon, and that the assault was the proximate cause of David Rea's death, you may, but need not infer, first, that the killing was unlawful and second, that it was done with malice. Malice, *and if anything else appears,*

the defendant would be guilty of second degree murder. (Emphasis added.)

. . . .

So, I charge that if you find from the evidence and beyond a reasonable doubt that on or about the 25th of September, 1977, that Walter Bonds intentionally and *without malice* and without justification or excuse assaulted David Rea with a pistol, thereby proximately causing David Rea's death, it would be your duty to return a verdict of guilty of second degree murder. However, if you do not so find or if you have a reasonable doubt as to one or more of those things, it would be your duty to return a verdict of—or you would not return a verdict of guilty of second degree murder. (Emphasis added.)

While it may be speculated that the record is inaccurate, we are bound by it for the purposes of appeal. *State v. Williams*, 280 N.C. 132, 184 S.E. 2d 875 (1971). Undoubtedly, the trial court intended to say "if *nothing* else appears" rather than "if anything else appears," and at times such a misstatement might well be considered a harmless *lapsus linguae*. However, when this error is considered together with the error in the second quoted portion of the charge, we find the charge contains prejudicial error. It is true the court had at one point correctly stated that murder in the second degree required an unlawful killing with malice. However, here the judge was giving his final mandate to the jury on the charge of murder in the second degree and the jury could have justifiably and reasonably understood from this instruction that malice was not an essential element of the crime charged.

The principal purpose of the charge is to give the jury a clear instruction which applies the law to the evidence in such a manner as to assist the jury in correctly understanding the case and in reaching a correct verdict. *Id.* We hold the charge contains prejudicial error in the challenged portions, requiring a new trial.

[3] As the case is being returned for a new trial, we turn to the question of the validity of the second judgment entered against defendant in the Superior Court of Robeson County on 9 December 1978. Defendant excepted to the entry of this judgment and argues it in his brief. We find this exception meritorious. The

9 December 1978 judgment was entered pursuant to a motion for appropriate relief filed by the defendant. N.C. Gen. Stat. ch. 15A, art. 89. Passing, without deciding, the interesting question whether the court upon a motion for appropriate relief can change a criminal sentence for discretionary reasons, when no error of law appears in the judgment, we hold the 9 December 1978 judgment is void because it was entered in the absence of the defendant. The second judgment changed the period of imprisonment from not less than twenty years nor more than thirty years to an imprisonment term of not less than thirty years.

The right of a defendant to be present at the time sentence is pronounced is a common law right, separate and apart from the constitutional or statutory right to be present at the trial. *State v. Pope*, 257 N.C. 326, 126 S.E. 2d 126 (1962). "The accused has the undeniable right to be personally present when sentence is imposed." *Id.* at 334, 126 S.E. 2d at 132. In *State v. Cherry*, 154 N.C. 624, 627, 70 S.E. 294, 295 (1911), we find the following:

> While our decisions have established that in case of waiver the presence of the accused is not necessary to a valid trial and conviction, all of the authorities here and elsewhere, so far as we have examined, are to the effect that when a sentence, either in felonies less than capital or in misdemeanors, involves and includes corporal punishment, the presence of the accused is essential. Thus, in *S. v. Paylor, supra*, Ashe, J., delivering the opinion, said: "But where the punishment is corporal the prisoner must be present, as was held in *Rex v. Duke*, Holt, 399, where the prisoner was convicted of perjury, Holt, C.J., saying: 'Judgment can not be given against any man in his absence for corporal punishment; he must be present when it is done.' "

Other decisions to the same effect are *State v. Brooks*, 211 N.C. 702, 191 S.E. 749 (1937); *State v. Stockton*, 13 N.C. App. 287, 185 S.E. 2d 459 (1971). The 9 December 1978 judgment is void and the same is hereby vacated.

For errors in the charge, defendant is entitled to a new trial. The other errors assigned may not appear in a second trial; therefore, we refrain from discussing them.

New trial.

Judges HEDRICK and CLARK concur.