STATE OF NORTH CAROLINA v. KELVIN STEPHEN ARRINGTON

No. COA10-1134

(Filed 16 August 2011)

**1. Motor Vehicles—driving while impaired—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of driving while impaired. The State was only required to prove defendant had an alcohol concentration of .08 or more while driving a vehicle on a State highway, and defendant's two successive Intoxilyzer tests administered after his car was stopped were .08.

**2. Constitutional Law—right to be present—imposition of additional costs and fees—defendant's physical presence not required**

The trial court did not err in a driving while impaired case by imposing additional costs and fees outside of defendant's physical presence. The imposition of fines was the necessary byproduct of the sentence, and defendant was given ample opportunity to respond. Further, payment of court costs does not amount to punishment.

Appeal by defendant from a judgment entered 13 May 2010 by Judge Lindsay R. Davis, Jr., in Harnett County Superior Court. Heard in the Court of Appeals 9 March 2011.

*Roy Cooper, Attorney General, by Assistant Attorney General Tammera S. Hill, for the State.*

*William B. Gibson for defendant.*

ELMORE, Judge.

Kelvin Stephen Arrington (defendant), appeals from his 13 May 2010 conviction of driving while impaired. Defendant contends that the trial court erred in denying his motion to dismiss based on insufficiency of the evidence and in imposing payment of court costs and fees outside of defendant's presence. After careful review, we find no error.

## I. Background

On 8 July 2009, defendant was convicted in Harnett County District Court of driving while impaired in violation of N.C. Gen. Stat. § 20-138.1. Defendant appealed to the superior court where he was tried before a jury on 13 May 2010 and found guilty. On 13 May 2010, the superior court judge, in open court, rendered a sentence, which included: (1) thirty days' imprisonment, suspended for eighteen months of supervised probation; (2) submitting to an assessment for substance abuse; (3) successfully completing recommended treatment; and (4) serving twenty-four hours of community service in ninety days. The judgment allowed defendant to transfer to unsupervised probation if he fully complied for twelve months. In the written judgment entered later that day, in addition to the above, defendant was ordered to pay $287.50 in court costs and a $225.00 community service fee. Defendant filed notice of appeal from this judgment on 18 May 2010.

Evidence was developed at trial that on 2 September 2007 at approximately 1:30 a.m., defendant was pulled over by trooper Antwain Wickware (Trooper Wickware) for driving without a right-side headlight. As he approached the vehicle, Trooper Wickware observed that defendant had "red, glassy eyes and [that there was] a strong odor of alcohol coming from the vehicle." When Trooper Wickware asked defendant if he had been drinking, defendant responded "yes." Defendant submitted to an Alco-Sensor test, which confirmed that defendant had alcohol in his system. Trooper Wickware then administered a Horizontal Gaze Nystagmus Test (HGN Test) to determine whether defendant had "appreciable impairment." The test indicated "negative." After the required fifteen-minute waiting period, Trooper Wickware re-administered the Alco-Sensor test. It again showed a positive result. Based on defendant having "red, glassy eyes," a strong odor of alcohol, and two positive readings on the Alco-Sensor, Trooper Wickware concluded that defendant was appreciably impaired and placed him under arrest for driving while impaired.

After transporting defendant to the law enforcement center in Lillington, Trooper Wickware advised defendant of his Intoxilyzer Rights and administered three more field sobriety tests. Defendant passed the one-leg stand test, marginally failed the walk-and-turn test, and failed the finger-to-nose test. At the conclusion of the required fifteen-minute waiting period, Trooper Wickware adminis-

tered the Intoxilyzer Test two times. Both tests reported defendant to have an alcohol concentration of .08.

## II. Discussion

Defendant contends that the trial court committed reversible error in denying his motion to dismiss for insufficiency of the evidence on the charge of driving while impaired under N.C. Gen. Stat. § 20-138.1, and in ordering defendant to pay costs and community service fees outside of his presence. We deal with each of those contentions in turn.

A. Defendant's Motion to Dismiss

[1] Defendant contends that the trial court erred in denying his motion to dismiss the charge of driving while impaired in violation of N.C. Gen. Stat. § 20-138.1 because of insufficient evidence. We disagree.

Upon defendant's motion to dismiss, the trial court must determine "whether there is substantial evidence (1) of each essential element of the offense charged . . . and (2) of defendant's being the perpetrator of such offense." *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980) (citations omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Earnhardt*, 307 N.C. 62, 66, 296 S.E.2d 649, 652 (1982) (quotation and citation omitted). "When ruling on a motion to dismiss for insufficient evidence, the trial court must consider the evidence in the light most favorable to the State, drawing all reasonable inferences in the State's favor." *State v. Miller*, 363 N.C. 96, 98, 678 S.E.2d 592, 594 (2009) (citation omitted).

N.C. Gen. Stat. § 20-138.1 says in relevant part:

> A person commits the offense of impaired driving if he drives any vehicle upon any highway . . . [a]fter having consumed sufficient alcohol that he has . . . an alcohol concentration of .08 or more. The results of a chemical analysis shall be deemed sufficient evidence to prove a person's alcohol concentration.

N.C. Gen. Stat. § 20-138.1 (2009). "Chemical analysis" is defined in N.C. Gen. Stat. § 20-4.01(3a) as "[a] test or tests of the breath, blood, or other bodily fluid or substance of a person to determine the person's alcohol concentration or presence of an impairing substance, performed in accordance with G.S. 20-139.1, including duplicate or sequential analysis." N.C. Gen. Stat. § 20-4.01(3a) (2009).

As to the required procedure for administration of chemical analysis, N.C. Gen. Stat. § 20-139.1 (b3) says in relevant part:

> The results of the chemical analysis of all breath samples are admissible if the test results from any two consecutively collected breath samples do not differ from each other by an alcohol concentration greater than .02. Only the lower of the two test results of the consecutively administered tests can be used to prove a particular alcohol concentration.

N.C. Gen. Stat. § 20-139.1(b3) (2009).

The evidence in this case tended to show *inter alia*: Defendant was driving his car when stopped by Trooper Wickware. Two separately administered Intoxilyzer Tests indicated defendant's blood-alcohol level to be .08. Trooper Wickware testified that the reading on the Intoxilyzer 5000 rounds down in order to "give the defendant the benefit of the doubt" if defendant "blew a .079, [the Intoxilyzer 5000] rounds it down to a .07. In this case he blew a .08." Based on the language of the statute and Trooper Wickware's testimony, if the breathalyzer test is correctly administered, then the method of such administration is designed to mitigate any margin of error in favor of defendant.

Defendant asserts that since the blood alcohol reading was the lowest for which he could be convicted under the statute, the margin of error of the Intoxilyzer should be taken into account to undermine the State's case against him. Our Supreme Court has examined the argument that the margin of error of chemical analysis should be taken into account when considering the validity of charges under N.C. Gen. Stat. § 20-138.1 in *State v. Shuping*, 312 N.C. 421, 323 S.E.2d 350 (1984). In *Shuping*, the defendant argued that the accuracy of a breathalyzer which she alleged to be .01 should undermine her conviction under the statute. *Shuping*, 312 N.C. at 429-30, 323 S.E.2d at 351. In rejecting that argument, our Supreme Court made clear that "[o]nce it is determined that the chemical analysis of the defendant's breath was valid when a reading of [.08] constitutes reliable evidence and is sufficient to satisfy the State's burden of proof as to this element of the offense of DWI." *Id.*, at 431, 323 S.E.2d at 356. Likewise, this Court observed that "[t]he 'result of a chemical analysis' is a report of a person's alcohol concentration, and the statute provides that the result of such a test constitutes *prima facie* evidence of the defendant's alcohol concentration as reported in the results." *State v. Narron*, 193 N.C. App. 76, 84, 666 S.E.2d 860, 866 (2008), *disc. review denied, State v. Narron*, 363 N.C. 135, 674 S.E.2d 140 (2009).

As we have noted, a valid chemical analysis of breath samples requires "two consecutively collected breath samples [that] do not differ from each other by an alcohol concentration greater than .02" and that "[o]nly the lower of the two test results . . . can be used to prove a particular alcohol concentration." N.C. Gen. Stat. § 20-139.1(b3) (2009). In this instance, Trooper Wickware administered the Intoxylizer test two times. Each administration showed a blood alcohol concentration of .08. These two successive administrations, with no difference between them, satisfy the mandates of N.C. Gen. Stat. § 20-139.1(b3).

Therefore, we hold that the Intoxilyzer 5000 test was correctly administered to defendant pursuant to N.C. Gen. Stat. § 20-139.1 (b3) and that the result of the test was valid. The test presents reliable evidence and accurately indicates defendant's level of impairment. *Shuping*, 312 N.C. at 431, 323 S.E.2d at 356. As such, the test result constitutes *prima facie* evidence, sufficient for submission to the jury, of defendant's blood alcohol concentration. *Narron*, 193 N.C. App. at 84-85, 666 S.E.2d at 866.

Defendant reminds us that if the evidence "is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant, the motion to dismiss must be allowed." *State v. Molloy*, 309 N.C. 176, 179, 305 S.E.2d 718, 720 (1983) (internal citations omitted). Defendant points out that, here, in this case, he was pulled over for having a broken headlight, not for unsafe driving; was cooperative with the arresting officer; passed the one-leg stand test; and was not "appreciably impaired" at the time of his arrest, according to the HGN test and testimony by Trooper Wickware. However, though such factors may be weighed by the trial court before sentencing, N.C. Gen. Stat. § 20-179(e) (2009), it is not necessary for the State to prove that defendant was appreciably impaired, uncooperative, or driving in an unsafe manner in order to prove that defendant is guilty of a violation of N.C. Gen. Stat. § 20-138.1(a2). To prove guilt, the State need only show that defendant had an alcohol concentration of .08 or more while driving a vehicle on a State highway. N.C. Gen. Stat. § 20-138.1(a2) (2009). It is undisputed in this case that defendant was driving when stopped, that he was given the Intoxilyzer test in the manner described and passed upon by us above, and that the result of this duly administered chemical analysis was .08 in two successive tests. Proof of each element of the charged offense was offered and defendant's motion to dismiss was properly denied. We find no error.

## B. Costs and Community Service Fees

**[2]** Defendant contends that the trial court erred in imposing additional costs and fees outside of his physical presence of the defendant in violation of his "right to be present at the time sentenced is pronounced." *State v. Bonds,* 43 N.C. App. 467, 474, 259 S.E.2d 377, 381 (1979). We disagree.

We review this proposed error of law *de novo. See* N.C.R. App. P. 28(b)(6) (2009); *State v. Crumbley,* 135 N.C. App. 59, 66-67, 519 S.E.2d 94, 99 (1999) (conducting a *de novo* review of the question of whether a sentence imposed on the defendant outside of his presence was proper).

Here, the sentence actually imposed in this case was the sentence contained in the written judgment. *See Abels v. Renfro Corp.,* 126 N.C. App. 800, 803, 486 S.E.2d 735, 737 (1997) ("Announcement of judgment in open court merely constitutes 'rendering' of judgment, not entry of judgment."). Defendant had a right to be present at the time that sentence was imposed. *See State v. Beasley,* 118 N.C. App. 508, 514, 455 S.E.2d 880, 884 (1995); *see also State v. Pope,* 257 N.C. 326, 330, 126 S.E.2d 126, 129 (1962) ("The right to be present at the time sentence is pronounced is a common law right, separate and apart from the constitutional or statutory right to be present at the trial."); *State v. Bonds,* 43 N.C. App. 467, 474, 259 S.E.2d 377, 381 (1979) (vacating judgment entered in response to a motion for appropriate relief while accused was not present).

N.C. Gen. Stat. § 15A-1343(e) provides that as a condition of probation, a defendant shall be required to pay all court costs. N.C. Gen. Stat. § 15A-1343(e) (2009). "Payment of any fines, courts costs, and fees" are to be imposed by the judge as a condition of a suspended sentence of supervised probation. N.C. Gen. Stat. § 20-179(r)(3) (2009). "Conditions not amounting to punishment include . . . a requirement to pay the costs of court." *State v. Brown,* 110 N.C. App. 658, 659, 430 S.E.2d 433, 434 (1993) (quotations and citation omitted).

Under the community service program, "[a] fee of two hundred and fifty dollars shall be paid by all persons who participate in the program or receive services from the program staff." N.C. Gen. Stat. § 143B-262.4 (2009). The fee must be paid in full before defendant can participate in the community service program. *Id.*

Defendant does not contest that he was in open court to hear himself sentenced with a level five punishment that included twenty-

four hours of community service in ninety-days and a thirty-day jail term which the trial court suspended for a term of eighteen months of supervised probation. Nor does he contest that he was given the order containing court costs and about which he complains, the same day as he heard the sentence pronounced in open court. He contends, however, that the trial court did not expressly impose court costs and the fees for community service in open court.

As authority for the proposition that the sentence in this case was improperly imposed, defendant first points to *State v. Crumbley*, 135 N.C. App. 59, 66-67, 519 S.E.2d 94, 99 (1999). In *Crumbley*, this Court examined the question of whether the imposition of consecutive as opposed to concurrent sentences outside the presence of a defendant was proper. *Id.* In holding that the sentence in that case was improperly rendered, this Court observed that by action of N.C. Gen. Stat. § 15A-1354(a), the default for sentencing is that sentences should run concurrently and that the change from concurrent to consecutive sentences was a *"substantive change* in the sentence [which] could only be made in the Defendant's presence, where he and/or his attorney would have an opportunity to be heard." *Id.* (emphasis added). Likewise, in *State v. Hanner,* on which defendant next relies, this Court considered the change in the oral disposition at sentencing from default concurrent sentencing at the rendering of judgment in the presence of the defendant to consecutive sentencing in the entry of written judgment and found that the sentence in that case was improperly entered. 188 N.C. App. 137, 141-42, 654 S.E.2d 820, 823 (2008). Finally, defendant looks to *State v. Willis*, wherein this Court found, relying on *Crumbley* and *Hanner*, that a change in the conditions of probation was inappropriately entered when the defendant was not given notice of the statutorily required hearing for a change in his probation. 199 N.C. App. 309, 310-12, 680 S.E.2d 772, 775 (2009).

Defendant's reliance on these cases is misplaced. In each of the cases defendant cites, the change in the judgment entered and the judgment that was rendered was "substantive," either in contravention of the statutorily set expectation of concurrent sentencing as in *Crumbley*, resulting in a substantially greater time of confinement, or in the face of no statutory direction for the particular conditions of probation, as in *Hanner*. That is not the case here. In this instance, each of the conditions imposed on defendant was a non-discretionary byproduct of the sentence that was imposed in open court. *See* N.C. Gen. Stat. § 15A-1343(e) (2009) (requiring the imposition of court costs as a condition of probation); N.C. Gen. Stat. § 20-179(r)(3)

(2009) (requiring the imposition of the "[p]ayment of any fines, court costs, and fees" as a condition of a suspended sentence of supervised probation.); N.C. Gen. Stat. § 143B-262.4 (2009) (requiring "a fee of two hundred fifty dollars ($250.00) [to] be paid by all persons who participate in the [community service] program or receive services from the program staff."). Far from being a "substantive change" in defendant's sentence, the imposition of fines in this case was the necessary byproduct of the sentence he was given and he does not contest that both he and his counsel had ample opportunity to respond to that sentence. *See Crumbley*, 135 N.C. App. at 66, 519 S.E.2d at 99.

Further, as we have noted, payment of court costs does not amount to punishment. *State v. Brown*, 110 N.C. App. at 659, 430 S.E.2d at 434. Therefore, the imposition of costs on defendant outside of his presence did not infringe upon his "right to be present at the time sentence is pronounced," *Bonds*, 43 N.C. App. at 474, 259 S.E.2d at 381, not only because these statutorily mandated fees were an integral part of the sentence defendant heard imposed upon him in open court, but because, since they did not constitute an additional or other punishment, imposition of costs and fees was not a substantial change in his sentence. *See generally Crumbley*, 135 N.C. App. at 66, 519 S.E.2d at 99. We find there was no error in the trial court's imposing the costs and fees in question outside the presence of defendant.

### III. Conclusion

We find that the trial court did not err in denying defendant's motion to dismiss for insufficiency of the evidence and that the trial court's imposition of costs outside the presence of defendant was likewise not error.

NO ERROR.

Judges BRYANT and GEER concur.